**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Tel.  (212) 696-6000
Fax  (212) 697-1559
Steven J. Reisman
Theresa A. Foudy

*Conflicts Counsel for the Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| BALLY TOTAL FITNESS OF | : | Case No. 08-14818 (BRL) |
| GREATER NEW YORK, INC., *et al.*, | : | (Jointly Administered) |
| Debtors. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| | : | |
| GREAT AMERICAN INSURANCE COMPANY, | : | |
| Plaintiff, | : | |
| v. | : | Adversary Proceeding |
| | : | No. 09-01023 (BRL) |
| BALLY TOTAL FITNESS HOLDING CORPORATION, | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF MOTION FOR AN ORDER DISMISSING ADVERSARY COMPLAINT FILED BY GREAT AMERICAN INSURANCE COMPANY PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 7012, AND <u>FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)</u>

**PLEASE TAKE NOTICE** that Bally Total Fitness Holding Corporation, a

debtor and debtor in possession ( "<u>Bally</u>" or the "<u>Debtor</u>") in the above-captioned chapter 11

cases (the "Chapter 11 Cases"), by and through its undersigned conflicts counsel, Curtis, Mallet-Prevost, Colt & Mosle LLP, hereby moves (the "Motion"), pursuant to Section 105(a) of the Bankruptcy Code, Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 12(b)(6) of the Federal Rules of Civil Procedure, for entry of an Order dismissing the Adversary Complaint filed by plaintiff Great American Insurance Company (the "Plaintiff") in the above-captioned adversary proceeding (the "Adversary Proceeding"). [1]

   **PLEASE TAKE FURTHER NOTICE** that a hearing (the "Hearing") on the Motion will be held on **March 24, 2009 at 10:00 a.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, before the Honorable Burton R. Lifland, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, Courtroom 623.

   **PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the Motion shall (a) be made in a writing describing the basis therefor; (b) comply with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the Southern District of New York, and the Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9007 implementing Certain Notice and Case Management Procedures; (c) be filed with the Bankruptcy Court (with a hard copy to chambers) in accordance with General Order M-242 (as amended); and (d) be served in accordance with the Administrative Order Establishing Case Management and Scheduling Procedures entered in the Chapter 11 Cases on December 22, 2008 [Docket No. 173]  (the "Case Management Order") on

---

[1] By filing the Motion, Bally is not waiving any defenses, affirmative or otherwise, relating to its defense of the Adversary Complaint and hereby reserves its right to incorporate such defenses in any other subsequent pleadings relating to its defense of this Adversary Proceeding.

(i) Counsel to the Debtors, Kramer Levin Naftalis & Frankel, LLP, 1177 Avenue of the Americas, New York, NY 10036, Attn.: Kenneth H. Eckstein, Esq.; (ii) Conflicts Counsel to the Debtors, Curtis, Mallet-Prevost, Colt & Mostle LLP, 101 Park Avenue, New York, NY 10178-0061, Attn.: Steven J. Reisman, Esq. and Theresa A. Foudy, Esq.; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, NY 10004, Attn.: Paul Schwartzberg, Esq.; (iv) Counsel to the Official Committee of Unsecured Creditors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, NY, New York 10036, Attn.: David Botter, Esq.; (v) any other parties required by the Case Management Order; and (vi) Counsel to Great American Insurance Company, Rosenberg Calica & Birney LLP, 100 Garden City Plaza, Garden City, New York  11530, Attn.: Edward M. Ross, Esq. and Judah Serfaty, Esq.; so as to be actually received by **4:00 p.m. (prevailing Eastern Time) on or before March 9, 2009**.

Dated: February 26, 2009
         New York, New York

       **CURTIS, MALLET-PREVOST,**
       **COLT & MOSLE LLP**


      By: ___*/s/  Steven J. Reisman*_____
       Steven J. Reisman (SR 4906)
       Theresa A. Foudy (TF 6268)
      101 Park Avenue
      New York, New York  10178-0061
      Telephone:  (212) 696-6000
      Facsimile:  (212) 697-1559

      *Conflicts Counsel for the Debtors*
       *and Debtors in Possession*

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Tel.  (212) 696-6000
Fax  (212) 697-1559
Steven J. Reisman
Theresa A. Foudy

*Conflicts Counsel for the Debtors*
*and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | | |
| BALLY TOTAL FITNESS OF | : | Case No. 08-14818 (BRL) |
| GREATER NEW YORK, INC., *et al.*, | | |
| | : | (Jointly Administered) |
| Debtors. | | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| | : | |
| GREAT AMERICAN INSURANCE COMPANY, | | |
| | : | |
| Plaintiff, | | |
| | : | |
| v. | : | Adversary Proceeding |
| | : | No. 09-01023 (BRL) |
| BALLY TOTAL FITNESS HOLDING | | |
| CORPORATION, | : | |
| | | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MOTION OF DEFENDANT BALLY TOTAL FITNESS
## HOLDING CORPORATION TO DISMISS ADVERSARY COMPLAINT

5589208

Defendant Bally Total Fitness Holding Corporation, a debtor and debtor in possession ("Bally" or the "Debtor") in the above-captioned jointly administered Chapter 11 cases (the "Chapter 11 Cases"), respectfully submits this motion for an order substantially in the form of the proposed order attached hereto as **Exhibit A** (the "Order") pursuant to Section 105(a) of Chapter 11 of Title 11 of the United States Code, as amended, (the "Bankruptcy Code") and Federal Rule of Civil Procedure 12(b)(6), applicable hereto pursuant to Federal Rules of Bankruptcy Procedure 7012, dismissing the Adversary Complaint brought against it by Great American Insurance Company ("GAIC"), for failure to state a claim upon which relief can be granted, and respectfully represents:

## PRELIMINARY STATEMENT

1. In 2005, GAIC paid the Debtor slightly over $10 million under the terms of two separate directors' and officers' ("D&O") liability insurance policies that GAIC had issued to Bally in January 2002 and February 2003 for which Bally had paid the required premiums. GAIC paid Bally those sums pursuant to its contractual obligations to reimburse Bally for costs Bally incurred in investigating and defending certain D&O claims. In doing so, GAIC stated that it did not waive its right to later sue the Debtor for rescission of the policies and to claim that the Debtor had to repay GAIC approximately $10 million. GAIC subsequently sued the Debtor for rescission in an action which was pending in the United States District Court for the Northern District of Illinois at the time Bally filed the Chapter 11 Cases.

2. Nearly four years after the reimbursement by GAIC to the Debtor of approximately $10 million under the terms of the insurance policies, GAIC's Adversary Complaint now seeks a declaratory judgment that approximately $10 million of the Debtor's cash – a fungible asset – are not property of the Debtor's estate, but rather are actually the precise monies that GAIC paid Bally in 2005. GAIC's Adversary Complaint thus seeks to

immunize its unsecured contingent rescission litigation claim from the bankruptcy process by removing substantial cash assets from the bankruptcy estate, and by somehow segregating these funds which "might" be necessary, at some unknown date in the future, to satisfy GAIC's rescission claim. In essence, GAIC is seeking an extraordinary remedy similar to a prejudgment garnishment, prejudgment attachment, or similar prejudgment set-aside.

3. GAIC presumably requests this extraordinary remedy so that GAIC my continue to prosecute its contingent litigation claim without regard to the automatic stay provided for by Bankruptcy Code Section 362(a). Then *if* GAIC prevails on its contingent litigation claim, GAIC would like to enforce that subsequent judgment, i.e., a general unsecured claim, against the Debtor on a dollar-for-dollar basis against this prejudgment set-aside. This remarkable attempt by GAIC to remove a substantial portion of the Debtor's cash assets from the estate in order to pre-fund an unsecured contingent rescission litigation claim, avoid the normal bankruptcy priority scheme and procedures, and obtain preferential treatment over all other general creditors, should be prevented.

4. Accordingly, the Adversary Complaint should be dismissed.

## STATEMENT OF FACTS

### A. The Allegations of the Adversary Complaint

5. Plaintiff GAIC issued directors' and officers' liability insurance ("D&O Insurance") to Bally and its officers and directors for the policy years June 30, 2001 to June 30, 2002 ("01/02 Policy") and June 30, 2002 to June 30, 2003 ("02/03 Policy") (collectively, the "Policies"). (Adv. Compl., ¶¶ 1, 15, Exs. 1 & 2.) Subsequently, Bally restated its financial results for the years ended December 31, 2000 and December 31, 2001, and Bally and certain of its directors and officers became defendants in various lawsuits, including securities class actions

and shareholder derivative suits, and became subjects of investigations by the Securities and Exchange Commission and the Department of Justice. (<u>Id.</u>, ¶¶ 2, 16-17.) Pursuant to its contractual insurance obligation under the Policies, GAIC paid to Bally $10 million, the full amount of the 02/03 Policy, and some unspecified portion of the $20 million limit of the 01/02 Policy, under the terms of an Interim Fee Advancement and Non-Waiver Agreement dated April 27, 2005, as modified by addenda dated June 6, 2005 and October 31, 2005, attached to the Adversary Complaint as Exhibit 3 (the "<u>Interim Fee Agreement</u>"). (<u>Id.</u>, ¶¶ 2, 21, 24.) That over $10 million sum reimbursed Bally for expenses incurred in defending the various D&O lawsuits and investigations. (<u>Id.</u>, ¶¶ 2, 24.)

6.      GAIC contends in the Adversary Complaint that it advanced the funds to Bally only "on an interim basis" and "under express protest." (<u>Id.</u>, ¶ 22.) Under the Interim Fee Agreement, GAIC reserved its right to bring an action for rescission within a specified time frame. (<u>Id.</u>, ¶ 23.) GAIC now claims that, *if* it filed such a rescission action, "the funds would remain in suspense until a final adjudication of the rescission action," would return to GAIC if rescission was granted, and would "pass to Bally" if rescission were not granted. (<u>Id.</u>) The Adversary Complaint alleges that the Interim Fee Agreement "does not authorize the commingling" of the funds advanced with other funds of Bally's and requires the return of those exact funds in the event of a judgment of rescission. (<u>Id.</u>) GAIC fails to mention that the Interim Fee Agreement did not prohibit the commingling of such funds and, in fact, did not address this issue in any manner whatsoever.

7.      On August 22, 2006, GAIC commenced an action for rescission, <u>Great American Insurance Company, v. Bally Total Fitness Holding Corporation,</u>, in the United States District Court for the Northern District of Illinois (the "<u>Rescission Action</u>"). (Adv. Compl., ¶¶ 4,

25.) GAIC sought a judgment against Bally in the sum of the over $10 million advanced under the Interim Fee Agreement. (Id., ¶ 4.) That action was pending at the time Bally and related entities filed the Chapter 11 Cases (Id., ¶¶ 4-5, 25.)

8.      GAIC's sole claim for relief seeks a declaratory judgment that the funds it paid to Bally under the Interim Fee Agreement are not property of the Debtor's estate. (Id., ¶¶ 6, 26-31.) In support of that claim, GAIC argues that, under the terms of the Interim Fee Agreement, Bally acquired "only bare legal title to the funds advanced" and never obtained equitable title to those funds. (Id., ¶¶ 6, 27-29.) GAIC thus concludes that, "*[i]n the event* GAIC is adjudicated to be entitled to a rescission of the Policies in the Rescission Action," it is entitled to a return, in full, of those funds "without reference to or encumbrance by any bankruptcy plan established in the Chapter 11 Cases." (Id., ¶ 31 [emphasis added]; see also ¶ 6.)

9.      GAIC's position recognizes that GAIC's entitlement to the funds is based on the contingency that it prevail on the factual and legal merits in the Rescission Action. GAIC does not explain what it envisions should happen to the funds should GAIC not prevail in the Rescission Action. Presumably, GAIC concedes that, in such event, the funds would be property of the Debtor's estate to be distributed in accordance with any bankruptcy plan confirmed in the Chapter 11 Cases (which most likely would occur before the Rescission Action could be concluded). Nor does GAIC explain what it envisions should happen to the funds in the interim while the complex factual and legal issues presented by the Rescission Action are being litigated. Even under GAIC's creative legal theory, the funds might be the Debtor's property (should the Debtor prevail in the Rescission Action) or might be GAIC's property (should GAIC prevail in the Rescission Action). Given the concededly contingent nature of GAIC's claim to funds that are in the possession of the Debtor and commingled with the Debtor's funds, GAIC's attempt to

set aside a substantial portion of the Debtor's current cash assets, to have such amounts declared not property of the Debtor's estate, and thus extract this important working capital from the bankruptcy estate based on these future contingencies, is legally meritless and factually unworkable. Further, such action would be highly detrimental to the Debtor's reorganization efforts as the Debtor currently has no DIP financing but rather is operating solely from existing cash assets, cash flow, and working capital.

### B. The Terms of the Interim Fee Agreement

10. The Interim Fee Agreement itself, which is attached as Exhibit 3 to the Adversary Complaint and thus may be considered in ruling upon a motion to dismiss under Fed. R. Civ. P. 12(b)(6), see Silicon Graphics, Inc. v. Merrill Lynch Trust Co. (In re Silicon Graphics, Inc.), 363 B.R. 690, 695 (Bankr. S.D.N.Y. 2007) (Lifland, J.); U.S. Home Corp. v. Los Prados Cmty. Assoc. (In re U.S.H. Corp.), 280 B.R. 330, 334 (Bankr. S.D.N.Y. 2002) (Lifland, J.), further demonstrates that the funds GAIC seeks cannot be set aside from the Debtor's current cash assets, which clearly are property of the Debtor's estate. That Agreement, dated April 27, 2005, provides that while Bally and its insured officers and directors, on the one hand, and GAIC, on the other hand, disagreed as to whether GAIC was obligated to provide coverage for certain enumerated actions, proceedings and investigations, GAIC would "pay" or "advance" "Costs of Defense" or "Investigative Costs," as defined in the Policies. (Adv. Compl., Ex. 3 [Interim Fee Agreement], ¶ 2.) Although the Interim Fee Agreement reserves GAIC's right to seek rescission within a specific time limit, and provides that Bally will repay the sums advanced should rescission be granted, nothing in the agreement requires that the funds advanced be escrowed, placed into a specified account, or segregated in any manner by Bally. (Id., ¶¶ 5-6.)

11.     Contrary to GAIC's assertions in paragraph 23 of its Adversary Complaint that those funds were somehow to be held "in suspense" so that they could be repaid *if* GAIC decided to bring a rescission action and *if* GAIC prevailed on that action, the Interim Fee Agreement did not require that the funds provided to Bally be segregated, nor did it prohibit such funds from being commingled with other Bally funds.  (Adv. Compl., Ex. 3.)  It also did not in any way delay the "pass[ing]" of title to those funds to the Debtor.  (Id.)  On the contrary, the Interim Fee Agreement recognized that the funds would reimburse Bally for legitimate and proper defense costs incurred by the over two dozen law firms, including some of the most prominent firms in the country, whose retention was expressly consented to by GAIC in the Interim Fee Agreement.  (Id.)  The Interim Fee Agreement also states that the funds be expended to pay invoices for legal services rendered within 60 days of receipt of those invoices and that, in certain circumstances, GAIC might even pay the money directly to the legal service providers.  (Id., ¶ 2.d & e.)

12.     Given that GAIC sent funds to the Debtor with the express intent of those funds being expended on D&O defense costs, or to reimburse Bally for D&O defense and investigatory costs already paid by Bally to counsel, subject only to Bally's promise to repay the sum advanced *if* GAIC sued for rescission and *if* GAIC obtained a judgment of rescission, the funds GAIC seeks in its Rescission Action cannot be set aside from the Debtor's current cash assets, which clearly are property of the Debtor's estate.  GAIC should be required to file a proof of claim for its general unsecured contingent litigation claim, just like any other similarly situated general unsecured contingent litigant.

## ARGUMENT

13.     A claim for relief must be dismissed when the plaintiff fails to allege any set of facts which would entitle it to relief.  See Fed. R. Civ. P. 12(b)(6); E & L Consulting, Ltd.

v. Doman Indus. Ltd., 472 F.3d 23, 28 (2d Cir. 2006). While a court must accept as true well-pleaded facts and view them in a light most favorable to the plaintiff, "conclusions of law or unwarranted deductions of fact are not admitted." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (internal citation and quotation marks omitted); see In re Silicon Graphics, Inc., 363 B.R. 690, 698 (Bankr. S.D.N.Y. 2007) (Lifland, J.) ("Although the Court is to take the well-pled allegations in the Complaint as true for a motion to dismiss, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness.") (citing Mason v. Am. Tobacco Co., 346 F.3d 36, 39 (2d Cir. 2003) and In re Speigel, Inc., 354 B.R. 51, 56 (Bankr. S.D.N.Y. 2006) (Lifland, J.)). Here, even accepting as true all of the Adversary Complaint's well-pleaded facts and viewing them in the light most favorable to GAIC, the Adversary Complaint fails to state a claim for which relief can be granted because it is clear from the face of the Adversary Complaint, and the Interim Fee Agreement attached thereto, that the funds from which GAIC seeks a $10 million set aside are property of the Debtor's estate. Accordingly, Bally's motion to dismiss the Adversary Complaint should be granted.

## I. The Funds GAIC Seeks To Recover In The Rescission Action Are Property Of The Debtor's Estate

14. GAIC's Adversary Complaint seeks a declaration that the sum of over $10 million of the Debtor's current cash assets and working capital, which GAIC was pursuing prior to the petition date in a separate litigation, is not property of the Debtor's estate. GAIC's argument is legally and factually meritless on its face. First, Bally did not agree to establish an escrow or set-aside fund in the Interim Fee Agreement, and GAIC did not insist upon the maintenance of such a segregated cash account by Bally. Second, cash is a fungible asset. Under any theory of accounting, such as LIFO or FIFO, the actual money paid in 2005 by GAIC

to Bally pursuant to the D&O insurance policies and the Interim Fee Agreement has long been expended and no longer is in the Debtor's custody or control in 2009, some four years later.

15.     Section 541 of the Bankruptcy Code provides an expansive definition of what is property of a debtor's estate.  See 11 U.S.C. § 541.  Under Section 541(a), the debtor's estate is "comprised of all the following property, wherever located and by whomever held:  (1) . . . all legal and equitable interests of the debtor in property as of the commencement of the case," subject only to certain specified exceptions set forth in Section 541.  Courts agree that this provision should be liberally construed.  See, e.g., MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 91-92 (2d Cir. 1988) ("the Bankruptcy Code broadly defines property of the estate"); Grillo v. Zurich Ins. Co., 170 B.R. 66, 69 (S.D.N.Y. 1994) (citing U.S. v. Whiting Pools, Inc., 462 U.S. 198 (1983)).  Indeed, the Supreme Court has noted that "[t]he scope of this paragraph [§541(a)(1)] is broad.  It includes all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property currently specified in section 70a of the Bankruptcy Act."  Whiting Pools, Inc., 462 U.S. at 205 n.8-9 ("[b]oth the congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate").  Moreover, where a party shows that the disputed funds were placed in the debtor's bank account, a rebuttable presumption is created that the debtor owns all of the funds within that account, and that therefore the account constitutes "property of the debtor's estate."  See U. S. v. $79,000 In Account No. 2168050/6749900, No. 96 Civ. 3493 (MBM), 1996 U.S. Dist. LEXIS 16536, at *10 (S.D.N.Y. Nov. 7, 1996) ("Once the funds are deposited in an account . . . the account holder is presumed to have title to and control over those funds."); LFD Operating, Inc. v. Ames Dep't Stores, Inc., 274 B.R. 600, 617 (Bankr. S.D.N.Y. 2002).

16.    Here, GAIC admits it provided the subject funds to reimburse Bally for the costs Bally incurred in defending various D&O lawsuits and investigations. (Adv. Compl., Ex. 3 [Interim Fee Agreement].) The Debtor was not required to segregate these funds, nor was there any delay in the funds passing to the Debtor. (Id.) On the contrary, it was specified that the funds would pay Bally for invoices related to the legal services provided to the Debtor and certain of its officers and directors. (Id.) This creates a strong, if not dispositive, presumption that the funds remitted to Bally by GAIC have been expended long ago and that the Debtor's current cash assets belong to the Debtor and are property of its estate. See Danning v. Bozek (In re Bullion Reserve of N. Am.), 836 F.2d 1214, 1217 (9th Cir. 1988); LFD Operating, Inc., 274 B.R. at 617; Cassirer v. Herskowitz (In re Schick), 234 B.R. 337, 343 (Bankr. S.D.N.Y. 1999). GAIC's Adversary Complaint does nothing to rebut this presumption.

17.    GAIC's allegations are not even close to falling into any of the exceptions contained in Section 541. See 11 U.S.C. § 541. Presumably, by arguing that Bally obtained only "legal" title to the monies GAIC advanced and not "equitable" title to such funds (Adv. Compl., ¶¶ 6, 27-29), GAIC is attempting to fit within Section 541(d), which excludes from property of the estate assets in which the debtor holds bare legal title with no accompanying equitable interest. That provision states:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d) (West 2009). The allegations contained in GAIC's Adversary Complaint and the terms of the Interim Fee Agreement attached thereto do not fall into this narrow exclusion.

18.     Section 541(d) provides only a narrow exclusion to the expansive reading

of Section 541(a)(1).  It provides that in certain limited circumstances involving mortgages,

trusts, and escrows, where a debtor has legal title to such mortgage interest, trust, or escrow, but

not an equitable interest in such property, only the legal title to that property becomes part of the

debtor's estate.  See, e.g., Comm. of Unsecured Creditors of Rama Group of Cos., Inc. v.

Gottesman Co. (In re Rama Group of Cos.), No. 01-CV-0424E(Sr), 2002 U.S. Dist. LEXIS 8864

(W.D.N.Y. May 6, 2002) (finding that Section 541(d) applied where court imposed constructive

trust on proceeds of sale held by debtor due to broker as finder's fee); In re Thomas, No. 06-

22557 (ASH), 2007 Bankr. LEXIS 2006 (Bankr. S.D.N.Y. June 4, 2007) (finding that Section

541(d) applied where court imposed constructive trust on recovered judgment held by state court

registry for debtor, determined by state court to be owed to creditor); In re Schick, 234 B.R. at

343 (considering whether funds constituted valid escrow account sufficient to fall under Section

541(d)); see also LFD Operating, Inc., 274 B.R. at 614 ("Section 541(d) describes a typical trust

situation:  a trustee holds bare legal title to property for the benefit of one or more beneficiaries

who hold the equitable title or interest in the trust property."); Geoffrey Orlandi, Property of the

Estate: Section 541, 3 BANKR. DEV. J. 341, 349-50 (1986) (Section 541(d) "limits the broad

parameters of Section 541(a) by including within 'property of the estate' only legal title where

the debtor holds property *in trust* for another" (emphasis added)).

19.     Presumably, GAIC is attempting to fit its unsecured contingent rescission

claim within these cases by implying that the Debtor is holding the specific funds provided by

GAIC "in suspense" pending the outcome of the Rescission Action.  (Adv. Compl., ¶ 23.)  But

that simply is not the case.  The Interim Fee Agreement did not contemplate that Bally would

hold the funds in trust for GAIC or in a segregated account but, rather, it provided that they

would be spent on legal fees; in some cases, by being paid directly to the legal professionals invoicing those fees. (Adv. Compl., Ex. 3 [Interim Fee Agreement], ¶ 2.d & e.)[1]

20. In the Rescission Action, GAIC seeks the return of the *amounts* that it advanced Bally – not the exact dollars it advanced Bally. Thus, in this Adversary Proceeding, it is asking this Court to require the Debtor to find another $10 million in the Debtor's estate and presumably segregate that money for potential recovery by GAIC *in the event that* GAIC is successful in the Rescission Action. However, GAIC does not offer any explanation as to what happens if GAIC is *unsuccessful* in its rescission claim. Presumably, GAIC would have to concede that, in that event, the more than $10 million it asks to be segregated *would* be property of the Debtor's estate to be distributed to creditors in accordance with their priority under any bankruptcy plan confirmed in the Chapter 11 Cases.

21. But, the determination of whether funds constitute property of a debtor's estate does not turn on whether a creditor's unsecured litigation claim is ultimately successful. To the contrary, a party like GAIC, that asserts a pre-petition litigation claim, holds only a contingent unliquidated general unsecured claim that might entitle it to a distribution from property of the estate under Section 541 to the extent the claim is ultimately allowed and funds are available for distribution in respect of such claims. See Ionosphere Clubs, Inc. v. Rolleston (In re Ionosphere Clubs), 111 B.R. 423, 433 (Bankr. S.D.N.Y. 1990) (Lifland, J.) (plaintiffs in class action against debtor held only "unliquidated, contingent pre-petition claims against the [estate]"); see also Childs v. Drexel Burnham Lambert Group (In re Drexel Burnham Lambert

---

[1] GAIC contends that the "Interim Fee Agreement does not authorize the commingling of the . . . [$10 million] . . . with other funds of Bally . . ." (Adv. Compl. at ¶ 23), but the Interim Fee Agreement says nothing about "commingling" one way or the other; it never mentions the word. What is clear from the Interim Fee Agreement is that Bally may be reimbursed for costs of investigation and defense.

<u>Group</u>), No. 90 Civ. 6954 (MP), 1992 U.S. Dist. LEXIS 15674, at *2 (S.D.N.Y. Oct. 13, 1992) (referring to litigation claimants as "unliquidated contingent securities litigation claimants").

22.     The time for GAIC to secure its rights to the cash remitted to Bally pursuant to the Interim Fee Agreement was prior to sending the cash in 2005.  Having failed to do so, GAIC cannot in these Chapter 11 Cases improve its position relative to other creditors.

23.     In short, GAIC's Adversary Complaint should be dismissed because GAIC has not and cannot allege facts that would show that the $10 million it seeks is not property of the Debtor's estate.  The Debtor's current cash assets unquestionably constitute property of the Debtor's estate and are subject to the claims of creditors in accordance with the provisions of the Bankruptcy Code and the terms of a future confirmed plan of reorganization. GAIC's contingent unsecured rescission claim clearly does not provide a basis upon which to set aside a substantial percentage of the Debtor's cash reserves, to the detriment of the Debtor's estate and other creditors.

II.     **In the Alternative, the Court Should Exercise**
        <u>**Its Equitable Powers And Dismiss the Adversary Complaint**</u>

24.     In the alternative, if the Court does not dismiss the Adversary Complaint for failure to state claim, the Court should use its equitable powers to dismiss it.  GAIC is attempting to use the Adversary Complaint to avoid Section 362(a)'s automatic stay and secure funds to pay its unsecured contingent rescission litigation claim ahead of all other creditors and in a dollar-for-dollar manner.  This Court should not give a forum to such an inequitable maneuver.

25.     Section 105(a) of the Bankruptcy Code empowers a court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Accordingly, bankruptcy courts may utilize their

-13-

equitable powers under Section 105(a) to issue orders, such as that requested here, that are consistent with the provisions of the Bankruptcy Code and in the best interests of a debtor's estate. See In re Ionosphere Clubs, Inc., 156 B.R. 414, 436 (S.D.N.Y. 1993) ("In order to allow the Trustee to assert actions which are property of the debtor's estate for the benefit of the estate as a whole, other claimants may be prohibited by the Bankruptcy Court from pursuing such actions under 11 U.S.C. § 105(a).") (citing cases); In re Lykes Bros. Steamship Co., 191 B.R. 935, 936 (Bankr. M.D. Fla. 1995) (noting that Section 105 enables courts to issue orders necessary to protect estate property subject to bankruptcy proceedings).

26.     Thus, this Court should dismiss GAIC's Adversary Complaint as it would be inequitable to permit an unsecured creditor with a contingent litigation claim to have funds to pay that claim segregated from the rest of the Debtor's estate. Such a result would effectively move GAIC ahead of other unsecured and even secured creditors in contravention of the express priority provisions of the Bankruptcy Code and common principles of equity. Such a result is particularly inappropriate in the case at hand because GAIC had an opportunity to demand segregation of the funds years ago and failed to achieve any such right. Having failed to do so, GAIC cannot in these Chapter 11 Cases improve its position relative to other creditors, who may not have had such an opportunity to shield themselves from financial losses.

27.     Further, such action would be highly detrimental to the Debtor's current reorganization efforts as the Debtor currently has no DIP financing but rather is operating the Debtor's estate solely from existing cash assets, cash flow, and working capital. If the Court were to grant the relief requested by GAIC, the Debtor's current cash reserves would be depleted by approximately 25-30%. Such a constraint on the Debtor's liquidity, at this critical juncture in the Debtor's reorganization efforts, would impair the Debtor's ability to reorganize and thereby

harm the Debtor's estates and other creditors. The Court should use its equitable powers to prevent such a result.

## CONCLUSION

WHEREFORE, Bally respectfully requests that this Court enter an Order substantially in the form attached hereto as Exhibit A dismissing with prejudice GAIC's Adversary Complaint and granting such other and further relief as is just.

Dated:  February 26, 2009
       New York, New York

**CURTIS, MALLET-PREVOST,**
  **COLT & MOSLE LLP**


By: ___*/s/  Steven J. Reisman*_____
    Steven J. Reisman (SR 4906)
    Theresa A. Foudy (TF 6268)
  101 Park Avenue
  New York, New York  10178-0061
  Telephone:  (212) 696-6000
  Facsimile:  (212) 697-1559

  *Conflicts Counsel for the Debtors*
    *and Debtors in Possession*

<u>**EXHIBIT A**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                           :          CHAPTER 11

BALLY TOTAL FITNESS OF                           :          Case No. 08-14818 (BRL)
GREATER NEW YORK, INC., *et al.*,

                                                 :          (Jointly Administered)
                                 Debtors.
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                 :
GREAT AMERICAN INSURANCE COMPANY,                :

                                                 :
                                 Plaintiff,
                                                 :
                  v.                             :          Adversary Proceeding
                                                 :          No. 09-01023 (BRL)
BALLY TOTAL FITNESS HOLDING
CORPORATION,                                     :

                                 Defendant.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER DISMISSING WITH PREJUDICE THE ADVERSARY COMPLAINT FILED
BY GREAT AMERICAN INSURANCE COMPANY AND GRANTING DEBTOR'S
MOTION TO DISMISS PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY
CODE AND FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6),
<u>APPLICABLE PURSUANT TO BANKRUPTCY RULE 7012</u>**

Upon the Motion for an Order Dismissing With Prejudice the Adversary Complaint Filed

by Great American Insurance Company Pursuant to 11 U.S.C. § 105(a), Bankruptcy Rule 7012,

and Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed February 26, 2009 ("the

"<u>Motion</u>")[1] by Bally Total Fitness Holding Corporation ("<u>Bally</u>" or the "<u>Debtor</u>"), a debtor and

debtor in possession in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>"); and a

---

[1] Unless otherwise indicated, terms that are not herein defined have the meanings ascribed to them in the Motion.

hearing having been held on March 24, 2009 (the "Hearing") to consider the relief requested in the Motion; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper before the Court pursuant to 28 U.S.C, §§ 1408 and 1409; and the Court having considered the allegations set forth in the Adversary Complaint filed by Great American Insurance Company on January 27, 2009 (the "Adversary Complaint"), the statements of counsel on the record of the Hearing and the pleadings of the parties in connection with the Motion; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and after due deliberation, and good and sufficient cause appearing therefore,

**IT IS HEREBY FOUND that:**[2]

A.     The statutory predicates for the relief requested in the Motion are Sections 105(a) of the Bankruptcy Code, Bankruptcy Rule 7012 and Federal Rule of Civil Procedure 12(b)(6).

B.     As evidenced by affidavits of service filed with this Court, proper notice of the Motion has been afforded to all parties in interest pursuant to the Administrative Order Establishing Case Management and Scheduling Procedures [Docket No. 173] entered in these Chapter 11 Cases and any applicable Bankruptcy Rules and local rules.

C.     As evidenced by the record before this Court, the Adversary Complaint filed by Great American Insurance Company is properly dismissed with prejudice because the Adversary Complaint fails to state a claim upon which relief can be granted.

D.     As evidenced by the record before the Court, the Motion, and the reasons stated on the record of the Hearing, the relief requested in the Motion should be granted.

**NOW, THEREFORE, IT IS HEREBY ORDERED that:**

1.     The relief requested by the Motion is GRANTED.

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the

5636767

2.      Any and all objections to the Motion that have not been withdrawn, resolved, waived, or settled as reflected on the record are overruled on the merits.

3.      The Adversary Complaint filed by Great American Insurance Company is dismissed with prejudice.

4.      This Court shall retain the exclusive jurisdiction to hear and determine all matters arising from or relating to this Order.

Dated: March _____, 2009
        New York, New York

_____
THE HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE

---

extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

5636767