UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

| | |
|---|---|
| BALLY TOTAL FITNESS OF<br>GREATER NEW YORK, INC., *et al.*,<br><br>               Debtors. | Chapter 11<br><br>Case No. 08-14818 (BRL) |

----------------------------------------------------------X

| | |
|---|---|
| GREAT AMERICAN INSURANCE<br>COMPANY,<br>               Plaintiff,<br>     v.<br><br>BALLY TOTAL FITNESS HOLDING<br>CORPORATION,<br><br>               Defendant. | Adversary Proceeding<br><br>Adv. Pro. No. 09-01023 (BRL) |

----------------------------------------------------------X

APPEARANCES**:**

ROSENBERG CALICA & BIRNEY LLP
100 Garden City Plaza
Garden City, NY 11530
Telephone: (516) 747-7400
By:    Edward M. Ross
          Judah Serfaty
*Attorneys for Great American Insurance Company*

SURDYK & BAKER
225 West Washington Street
Chicago, Ill 60606
Telephone: (312) 924-2818
By:    Leonard S. Surdyk
          Robert B. Baker
          Janet A. Kachoyeanos
*Of Counsel, Great American Insurance Company*

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
Telephone: (212) 696-6000
Facsimile: (212) 697-1559
By:    Steven J. Reisman
       Theresa A. Foudy
       Myles F. Bartley
       Maryann Gallagher
*Conflicts Counsel for the Debtors
and Debtors in Possession*

## MEMORANDUM DECISION AND ORDER
## DISMISSING ADVERSARY COMPLAINT

Before this Court is the motion to dismiss of Bally Total Fitness Holding Corporation ("Bally" or "Debtor") seeking to dismiss the complaint (the "Complaint") of Great American Insurance Company ("GAIC"). Bally asserts that the Complaint fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Federal Rules"), made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

The Complaint seeks a declaratory judgment that funds advanced by GAIC to Bally under various directors' and officers' liability insurance policies and an Interim Fee Advancement and Non-Waiver Agreement (the "Interim Fee Agreement") are not property of Bally's bankruptcy estate under section 541 of Title 11, United States Code (the "Code"). Specifically, GAIC alleges that the terms of the Interim Fee Agreement and Illinois law created an implied trust depriving Bally's estate of an equitable interest in the funds advanced. Put another way and distilled to its essence, GAIC seeks a finding that the mere filing of a complaint for rescission in a legal forum is dispositive of the Debtor's property interest, requiring a carve-out of a substantial portion of the general funds of its insolvency estate.

2

For the reasons set forth below and at oral argument, I hold that the funds at issue are property of the Bally estate. Accordingly, the Debtor's motion to dismiss shall be granted.

**BACKGROUND**

Prior to Bally's bankruptcy petition, GAIC issued directors' and officers' liability policies to Bally for the policy years June 30, 2001 to June 30, 2002 ("01/02 Policy") and June 30, 2002 to June 30, 2003 ("02/03 Policy") (collectively, the "D&O Policies"). After the policies were issued, Bally restated its financial results for the years ended December 31, 2000 and December 31, 2001, which reflected a substantial decrease in stockholders' equity for those respective years (the "Restatement").

As a result of the Restatement, Bally and certain of its directors and officers were sued in various lawsuits, including securities class actions and shareholder derivative suits, and also became the subjects of certain investigations by the Securities Exchange Commission and Department of Justice. Seeking coverage to defend the various claims, Bally submitted these matters to GAIC. GAIC disputed its obligation to supply coverage and only agreed to provide coverage under the condition that Bally and its directors and officers enter into the Interim Fee Agreement. Pursuant to the Interim Fee Agreement, GAIC asserted that "the Policies are or may be void *ab initio* and subject to rescission, as to each and all of the Bally parties, by virtue of, *inter alia*, alleged material misrepresentations in the applications for the Policies," and further stated that it reserved its right to bring a rescission action against Bally and seek reimbursement of any funds advanced. (Adv. Compl., Ex. 3, 4–5, 12, 14). However, the Interim Fee Agreement did not restrict Bally's ability to commingle its assets with any funds advanced, nor did it require Bally to keep the funds in suspense or place them in a segregated account. Under the Interim Fee Agreement, GAIC advanced to Bally the full $10 million policy limit of the 02/03 Policy,

3

and a small portion of the 01/02 Policy, to reimburse Bally for expenses it had already incurred in defending the various lawsuits and investigations.

Consistent with the Interim Fee Agreement, GAIC commenced a rescission action on August 22, 2006, *Great American Insurance Company, et al. v. Bally Total Fitness Holding Corporation, et al.*, in the United States District Court for the Northern District of Illinois, Case No. 06-cv-04554 (the "Rescission Action"), seeking both rescission of the D&O Policies and a monetary judgment in an amount equal to the funds advanced. Thereafter, on December 3, 2008, Bally filed its voluntary bankruptcy petition.

The Complaint before this court seeks a declaratory judgment that: (1) GAIC did not convey equitable title to the over $10 million advanced to Bally under the Interim Fee Agreement; (2) Bally did not acquire, and does not now have, equitable title to the funds advanced; (3) if Bally has any title to the funds, it has only bare legal title; (4) the funds are not property of the Bally bankruptcy estate under section 541 of the Code; and (5) if it is adjudicated that GAIC is entitled to a rescission of the D&O Policies in the Rescission Action, GAIC is also entitled to return of the funds in full.

## DISCUSSION

### I. Rule 12(b)(6) Of The Federal Rules Of Civil Procedure

When considering a motion to dismiss under Federal Rule 12(b)(6), a court must accept all factual allegations in the complaint as true, even if the allegations are doubtful in fact. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."). A court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."

4

*Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985). Therefore, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 235–36 (1974)).

However, the plaintiff cannot merely plead "labels and conclusions" and provide a "formulaic recitation of a cause of action's elements." *Twombly*, 127 S. Ct. at 1965. Rather, the plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007).

## II.  Section 541 Of The Code, Property Of The Estate

Pursuant to section 541(a)(1) of the Code, the debtor's estate is "comprised of . . . all *legal* and *equitable* interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added). The estate is broadly defined and includes "all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property . . . specified in section 70a of the Bankruptcy Act." *U.S. v. Whiting Pools, Inc*., 462 U.S. 198, 205 n.9 (1983) (quoting H.R. REP. NO. 95-595, at 367 (1977)). However, pursuant to section 541(d) of the Code,[1] if the debtor at the commencement of the case merely holds a legal interest in property, it becomes property of the estate "only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d); *Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re*

---

[1] "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

5

*Howard's Appliance Corp.)*, 874 F.2d 88, 93 (2d Cir. 1989); *In re Commodore Bus. Machines, Inc.*, 180 B.R. 72, 82 (Bankr. S.D.N.Y. 1995). Thus, property held by a debtor in trust "vests the estate with bare legal title to that property, subject to the superior equitable interest of the true owner" and is not property of the estate. *In re Commodore*, 180 B.R. at 82.

GAIC asserts that the funds advanced are not property of the estate because at most, Bally only acquired bare legal title to the funds advanced. Specifically, based upon a theory of implied trust under Illinois law and section 541(d) of the Code, GAIC contends that Bally lacks an *equitable* interest in the funds advanced and is therefore required to hold the funds for the benefit of GAIC pending the resolution of the Rescission Action. Accordingly, the issue before this court is whether the Interim Fee Agreement created an implied trust between Bally and GAIC, thereby depriving the Bally estate of an equitable interest in the funds advanced.

**III. The Funds Advanced Are Property Of The Estate Because The Interim Fee Agreement Did Not Establish An Implied Trust.**

The Interim Fee Agreement did not create an implied trust between Bally and GAIC. To support its claim, GAIC relies on cases that are factually distinguishable from the facts presently before this court and stand for propositions that negate the existence of an implied trust between Bally and GAIC. Particularly, GAIC relies heavily on *Firestone Tire & Rubber Co. v. Goldblatt Bros. Inc. (In re Goldblatt Bros., Inc.)*, 33 B.R. 1011 (N.D. Ill. 1983) and cites it for the proposition that in Illinois "the law presumes, when one turns over to another proceeds to be held and later returned . . . there is a presumption that an implied trust has been created." *Firestone*, 33 B.R. at 1013. However, this very proposition refutes GAIC's assertion of an implied trust. The Interim Fee Agreement in no way created an agreement whereby one party transferred proceeds "to be held and later returned." Specifically, the Interim Fee Agreement did not require Bally to hold the funds, nor did it require Bally to return the funds without condition. In

6

addition, it neither stipulated for a trust, nor did it provide that the funds be segregated, put in escrow, or set aside in any way.

Furthermore, the facts before this court are easily distinguishable from those in *Firestone*. In *Firestone*, the parties entered into a license agreement under which Firestone sold products under the Goldblatt name and, at the end of each business day, Firestone was required to turn over the entirety of that day's sales to Goldblatt, who would then deduct royalty fees and remit the remainder to Firestone. *Firestone*, 33 B.R. at 1012. Accordingly, in *Firestone*, Firestone had an absolute right to the funds under the license agreement. However, unlike Firestone, GAIC did not have an absolute right to the funds that it advanced to Bally. Rather, return of the funds advanced was merely contingent upon GAIC successfully rescinding the D&O Policies.

Thus, an implied trust was never created between Bally and GAIC because Bally in no way was obligated to hold and return the funds, nor did GAIC have an absolute right to the funds. As a result, the funds advanced pursuant to the Interim Fee Agreement are property of the estate pursuant to section 541(a) of the Code.

Last, it should be noted that GAIC voluntarily entered into the Interim Fee Agreement and had the ability to insert language that created a trust relationship between the parties. However, GAIC neglected to include such language and only chose to reserve its right to seek rescission and recoupment of funds advanced. Furthermore, GAIC does not seek, nor can it seek, specific funds as there are no earmarked funds. Actually, what is sought is to impress a trust against general funds of the estate. This it cannot do. At best, GAIC holds a contingent general unsecured claim. In fact, GAIC recognized its creditor status when it filed a contingent proof of claim in the Bally bankruptcy proceeding. By instituting this declaratory proceeding, in

7

addition to submitting itself to this court's proofs of claim adjudication process, GAIC triggers a potential of conflicting decisions and a drain of judicial resources.[2]

## CONCLUSION

Based on the foregoing, the funds advanced are property of the estate under section 541(a) of the Code. Accordingly, the motion to dismiss is granted.

IT IS SO ORDERED.

Dated: March 27, 2009
       New York, New York

                                        /s/ Burton R. Lifland  
                                      UNITED STATES BANKRUPTCY JUDGE

---

[2] In addition to filing a proof of claim and commencing the adversary proceeding, GAIC, along with related insurance carriers, seeks stay modification with respect to the Rescission Action.